# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOSH F. FLOWERS, ROBERT
STENCIL, DEMARVIS JOHNSON,
JONATHEN BEARD, JOSE L.
GONZALEZ-BRACERO, AUSTIN
ANTHONY KAQUATOSH, and
CHRISTOPHER BUTLER,

          Petitioners,

v.

STATE OF WISCONSIN, BROWN
COUNTY JUDGES, TODD J.
DELAIN, JENNIFER BIAS, and
BROWN COUNTY HEAD PUBLIC
DEFENDER,

          Respondents.

Case No. 25-CV-831-JPS

# ORDER

## 1.  INTRODUCTION

Petitioners Josh F. Flowers ("Flowers"), Robert Stencil ("Stencil"), Demarvis Johnson ("Johnson"), Jonathen Beard ("Beard"), Jose L. Gonzalez-Bracero ("Gonzalez-Bracero"), Austin Anthony Kaquatosh ("Kaquatosh"),[1] and Christopher Butler ("Butler") (together, "Petitioners") attempt to proceed as a class on a petition for habeas corpus, ostensibly under 28 U.S.C. § 2254. ECF No. 1. They are all subject to either completed or ongoing state prosecutions in Brown County, Wisconsin, and assert that delays in appointment of counsel to represent them during those

---

[1] The petition contains slight errors in Beard's, Kaquatosh's, and Gonzalez-Bracero's names. The Court uses their names as they appear in state court records and will direct the Clerk of Court to update the docket accordingly. *See infra* Section 3.

prosecutions violate their constitutional rights. *See id.*; *see infra* Section 3. This Order screens the petition; because Petitioners cannot proceed as a class and for other reasons detailed below, the petition must be denied.[2]

## 2. SCREENING STANDARD

Petitioners invoke 28 U.S.C. § 2254 as the basis for their petition. ECF No. 1 at 1. Section 2254 "is the vehicle for prisoners in custody pursuant to the *judgment* of a state court," i.e., those cases in which the petitioner has been convicted of a crime and wishes to challenge that conviction. *Jacobs v. McCaughtry*, 251 F.3d 596, 597 (7th. Cir 2001) (citing *Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000) and collecting other cases). Meanwhile, 28 U.S.C. § 2241 provides a way for those in pretrial custody to challenge certain aspects of a state criminal proceeding. *Id.* (citing same; other citations omitted). As discussed further in Section 3, most Petitioners appear to be challenging their pretrial custody, whereas at least Flowers appears to be challenging an aspect of his conviction in a completed state criminal case.

Either way, the Rules Governing Section 2254 Cases apply to Petitioners. *See* Rule 1(b), Rules Governing Section 2254 Proceedings ("The district court may apply any or all of these rules to a habeas corpus petition" brought under § 2241); Civ. L.R. 9(a)(2). Rule 4 of the Rules Governing Section 2254 Cases requires the Court to conduct a screening or "preliminary review" of the habeas petition. At the screening stage,

_____

[2]No Petitioner has paid the filing fee. Flowers submitted an "affidavit of indigency," ECF No. 2, but has not formally moved for leave to proceed without prepayment of the filing fee, also known as proceeding in forma pauperis. Because the Court denies the petition, the Court will not seek the $5.00 filing fee from Petitioners. However, should any Petitioner seek to refile a petition, he must pay the filing fee or seek leave to proceed without doing so.

> [i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition . . . .

Rule 4, Rules Governing Section 2254 Proceedings. The Court accepts as true the petitioner's well-pleaded factual allegations, *Gibson v. Puckett*, 82 F. Supp. 2d 992, 993 (E.D. Wis. 2000) (citing *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976)), but not his legal conclusions.

Under Rule 4, the Court analyzes preliminary obstacles to review, including whether the petitioner has complied with the statute of limitations, exhausted available state remedies, avoided procedural default, and set forth non-frivolous claims that are cognizable in a habeas petition. If those issues do not preclude a merits review of the claims, the Court directs the respondent—the individual in charge of the institution where the petitioner is currently held, *see* Rule 2(a), Rules Governing Section 2254 Proceedings—to respond to the petition. If any of those issues do preclude a merits review, however, the Court will dismiss the petition.

**3.    RELEVANT FACTS AND CONTEXT**

Petitioners allege that their constitutional rights have been or are being violated due to delays in appointment of counsel in their state criminal cases. The Court begins by providing some context about appointment of counsel to indigent defendants and the beginning stages of criminal cases in Wisconsin, then recounts facts relevant to each Petitioner's case in Brown County Circuit Court, and finally discusses Petitioners' proposed legal theories and relief.

**3.1    Context**

The Sixth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, guarantees counsel in criminal cases, regardless of a defendant's ability to pay. *Gideon v.*

*Wainwright*, 372 U.S. 335, 342–44 (1963). It also guarantees a speedy trial. U.S. CONST., amend. VI.

In Wisconsin, the State Public Defender ("SPD") is tasked with appointing counsel for defendants who are indigent and cannot afford an attorney—either "SPD staff attorneys . . . [or] certified attorneys who are members of the private bar." *In re Petition to Amend SCR 81.02*, Wis. Sup. Ct. Order No. 17-06, 2018 WI 83, at 5 (issued June 27, 2018, eff. Jan. 1. 2020) (citing WIS. STAT. §§ 977.05(4)(i), (j), (jm); 977.05(5)(a); 977.07; and 977.08). Private attorneys who accept SPD appointments are compensated at state expense, at a rate set by the Wisconsin Supreme Court. *Id.* at 12 (citing *County of Dane v. Smith*, 13 Wis. 585, 586 (Wis. 1861)). Alternatively, "[i]f lawyers are unavailable or unwilling to represent indigent clients at the SPD rate," then the state court "must appoint a lawyer . . . at county expense." *Id.* at 15 (citing *State v. Dean*, 471 N.W.2d 310 (Wis. Ct. App. 1991)).

Wisconsin law "provide[s] for a prompt determination of indigency and appointment of a public defender." *State v. Pultz*, 556 N.W.2d 708, 714 n.10 (Wis. 1996) (citing WIS. STAT. §§ 967.06, 977.02, and 977.07). But the Wisconsin Supreme Court has noted "significant delays in the appointment of counsel" in criminal cases. *In re Petition to Amend SCR 81.02* at 17. So has the SPD. *See 'UpFront': State Public Defender Says It Will Take Years to Clear 35,000-Case Backlog*, WISPOLITICS (Apr. 18, 2022), www.wispolitics.com/2022/upfront-state-public-defender-says-it-will-take-years-to-clear-35000-case-backlog/ [perma.cc/JXA7-JW9U].

In Wisconsin, a criminal defendant must be brought before a court "within a reasonable time" of his arrest for an initial appearance. WIS. STAT. § 970.01(1). In felony cases, at the initial appearance, the state court advises

the defendant of the charges against him, the maximum penalties, and his rights to counsel and a preliminary hearing; determines on what conditions to release the defendant pending further proceedings; and sets a bail amount. *See* WIS. STAT. § 970.02; *Duties of the judge at initial appearance*, 9 WIS. PRAC., CRIM. PRAC. & PROC. § 3.2 (2d ed. 2025).[3]

If the felony defendant remains detained after the initial appearance and bail has been set at over $500, the court must hold a preliminary hearing within ten days. WIS. STAT. § 970.03(2).[4] The purpose of the preliminary hearing is to determine whether there is probable cause that the defendant committed a felony and should be bound over for trial. *Id.* at (1), (7).

---

[3]"The statutory right to an initial appearance 'within a reasonable time' codifies the due process rights guaranteed by Article I, § 8 of the Wisconsin Constitution and the Fourteenth Amendment to the United States Constitution." *Purpose*, 9 WIS. PRAC., CRIM. PRAC. & PROC. § 3.1 (2d ed. 2025) (footnote omitted). For warrantless arrests, an initial appearance may include a judicial probable cause determination, *id.*; in that case, the initial appearance generally must take place within forty-eight hours of arrest. *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Where the defendant was arrested pursuant to a warrant issued after a judicial finding of probable cause, "no precise definition exists of what constitutes a 'reasonable time' under Wis. St[at]. § 970.01(1)." *Purpose*, 9 WIS. PRAC., CRIM. PRAC. & PROC. § 3.1.

Although § 970.02 does not list a probable cause determination among the state court's duties at the initial appearance, "it is the practice of many Wisconsin judges to review the [criminal] complaint at the initial appearance in order to ensure that probable cause is stated." *Duties of the judge at initial appearance*, 9 WIS. PRAC., CRIM. PRAC. & PROC. § 3.2 (footnote omitted).

[4]If the defendant is released from custody following the initial appearance, then the preliminary hearing must take place within twenty days of the initial appearance. WIS. STAT. § 970.03(2). The felony defendant formally enters a plea later at an arraignment. WIS. STAT. § 971.05(3)–(4). In misdemeanor cases, there is no preliminary hearing, and the defendant may enter a plea at the initial appearance. *See Duties of the judge at initial appearance*, 9 WIS. PRAC., CRIM. PRAC. & PROC. § 3.2.

"[T]he court may extend [the] time" limit for holding a preliminary hearing on a party's or its own motion and "for cause." *Id.* at (2). The court must adequately explain its finding of cause for extending the time limit for holding a preliminary hearing. *See State v. Lee*, 955 N.W.2d 424, ¶ 3 (Wis. Ct. App. 2021). "Although the SPD's search for counsel can constitute good cause to delay the preliminary hearing, . . . there must be a . . . robust consideration of relevant factors . . . including the necessity and feasibility of appointing counsel at county expense, especially in instances of prolonged delay." *Id.* "[T]he failure to hold a preliminary hearing within the [statutorily] prescribed time results in a loss of personal jurisdiction" over the defendant and requires dismissal without prejudice of the charges. *Id.*, ¶ 61 (footnote omitted). The Wisconsin Court of Appeals has also acknowledged concern that delays in a preliminary hearing due to a lack of appointed counsel may implicate a defendant's constitutional rights to due process, counsel, and a speedy trial, though in the *Lee* case it did not address whether Lee's constitutional rights were violated. *Id.*, ¶ 62.

Finally, Wisconsin's speedy trial statute provides that a defendant must be brought to trial within sixty days of their initial appearance if the crime charged is a misdemeanor and within ninety days of the date that any party makes a speedy trial demand if the crime charged is a felony. WIS. STAT. § 971.10(1)–(2)(a). A court may continue the speedy trial date, on its own motion or a motion of any party, "if the ends of justice served by [doing so] outweigh the best interest of the public and the defendant in a speedy trial." *Id.* at (3)(a).

### 3.2    Flowers

Flowers alleges that he waited over 155 days for appointment of counsel. ECF No. 1 at 1. He is subject to numerous state cases, two of which

may be relevant to the petition. First, he is charged with the felonies of operating a vehicle while intoxicated, fleeing or eluding an officer, resisting or obstructing an officer, and other related felony and misdemeanor charges in an open case. *State of Wisconsin v. Josh Fitzgerald Flowers*, Brown Cnty. Cir. Ct. Case No. 2025CF000840, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2025CF000840&county No=5&index=0&mode=details (last visited July 31, 2025).[5] In late May 2025, a complaint was filed against Flowers, and he had an initial appearance at which he was provisionally represented by counsel. *Id.*, May 30, 2025 docket entries. A few days later SPD appointed permanent counsel, who filed a speedy trial demand. *Id.*, June 4, 2025 docket entries. Flowers, through counsel, waived his preliminary hearing. *Id.*, June 6, 2025 docket entry. The case is set for trial to begin on August 21, 2025. *Id.*, June 20, 2025 docket entry. Although this case is open and therefore could theoretically be challenged under § 2241, this case does not appear to be the subject of the instant petition because Flowers was promptly appointed counsel.

Second, Flowers was charged with misdemeanor property damage and trespassing in an earlier case, which is now closed. *State of Wisconsin v. Josh Fitzgerald Flowers*, Brown Cnty. Cir. Ct. Case No. 2023CM000809, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2023CM000809&count yNo=5&index=0&mode=details (last visited July 31, 2025). In this case, the complaint was filed and Flowers had an initial appearance in early August 2023. *Id.*, Aug. 9, 2023 docket entries. Provisional counsel did not appear for

---

[5]The Court may take judicial notice of public records, including state court records. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (collecting cases).

Flowers at the initial appearance. *See id.* SPD did not appoint permanent counsel until January 2024.[6] *Id.*, Jan. 12 and 16, 2024 docket entries. Flowers ultimately pleaded guilty and was sentenced in late September 2024. *See id.*, Sept. 24 and 26, 2024 docket entries. Given the length of the delay between Flowers's arrest and appointment of counsel in this case—156 days, which closely aligns with the delay alleged in the petition, ECF No. 1 at 1—the Court presumes that this is the case to which Flowers refers in the petition. Because this case is closed, § 2254 is the proper basis for relief. *See Jacobs*, 251 F.3d 596 at 597 (citations omitted).

### 3.3    Stencil

Stencil alleges that, as of the filing of the petition, he had been waiting over 369 days for appointment of counsel. ECF No. 1 at 1. He is subject to two open state cases. First, he faces felony and misdemeanor drug charges in *State of Wisconsin v. Robert Yongho Stencil*, Brown Cnty. Cir. Ct. Case No. 2022CF000892, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2022CF000892&county No=5&index=0&mode=details (last visited July 31, 2025). The complaint was filed, and Stencil had an initial appearance at which he was provisionally represented by counsel, in late May 2022. *Id.*, May 25, 2022 docket entries.

The state court repeatedly waived the time limit for a preliminary hearing. *Id.*, June 13, Aug. 22, Oct. 6, Nov. 17, and Dec. 29, 2022; Feb. 9, Mar. 23, May 4, June 15, June 29, Aug. 10, Sept. 21, Nov. 2, and Dec. 14, 2023; Jan. 25, Apr. 11, May 28, Aug. 30, and Dec. 5, 2024; Feb. 5, Mar. 19, and Apr. 10, 2025 docket entries. An attorney, Robert Malloy ("Malloy"), was appointed

---

[6]Because this was a misdemeanor case, Flowers did not receive a preliminary hearing. *See supra* note 4.

in May 2023 but withdrew in late June 2023, for reasons that are not clear from the docket. *Id.*, May 16 and June 15, 2023 docket entries; *generally id.* (indicating under "Defendant" header that Malloy withdrew on June 29, 2023). Oddly, Malloy appeared for Stencil at a hearing in June 2024. *Id.*, June 11, 2024 docket entry. Finally, on June 27, 2025, John Herman ("Herman") was appointed to represent Stencil. *Id.*, June 27, 2025 docket entries. Stencil, through Herman, waived his preliminary hearing in July 2025, and an arraignment was held in late July 2025. *Id.*, July 7 and July 21, 2025 docket entries.

In total, Stencil waited nearly three years for appointment of counsel. It appears that Stencil was released from custody for much of this time. *See, e.g., id.*, Aug. 22, 2022 docket entry ("Bond reinstated."); Feb. 22 and 26, 2024 docket entries (noting that Stencil "failed to comply with the conditions of release on bond" and issuing bench warrant); Apr. 11, 2024 docket entry (warrant quashed, bond reinstated); May 23 and 28, 2024 docket entries (warrant issued again; Stencil appearing in custody). However, he has been in custody since late May 2024. *See generally id.*, docket entries from May 28, 2024 to present.

Stencil filed a motion to dismiss, the legal basis for which is unclear, in May 2025, and the state court denied it. *Id.*, May 21 and June 5, 2025 docket entries. He filed a "Petition to By Pass [sic]" to the Wisconsin Supreme Court, which that court denied because there was no appeal pending before the Wisconsin Court of Appeals. *Id.*, June 25 and July 8, 2025 docket entries.

Stencil's second relevant case, also a felony drug case, has followed a nearly identical path. *State of Wisconsin v. Robert Yongho Stencil*, Brown Cnty. Cir. Ct. Case No. 2022CF001062, *available at*

https://wcca.wicourts.gov/caseDetail.html?caseNo=2022CF001062&county
No=5&index=0&mode=details (last visited July 31, 2025). The complaint
was filed, and Stencil had an initial appearance at which he was
provisionally represented by counsel, in late June 2022. *Id.*, June 23, 2022
docket entries. Stencil failed to appear at a hearing in late July 2022 and a
bench warrant issued, but bond was later reinstated. *Id.*, July 22 and Aug.
22, 2022 docket entries. However, Stencil has been in custody since May
2024. *See generally id.*, docket entries from May 28, 2024 to present.

Malloy was initially appointed but withdrew shortly thereafter;
Herman was recently appointed to represent Stencil. *Id.*, May 16 and June
15, 2023 and June 27, 2025 docket entries. The state court repeatedly waived
the time limit for a preliminary hearing. *Id.*, June 23, Aug. 22, Oct. 6, Nov.
17, and Dec. 29, 2022; Feb. 9, Mar. 23, May 4, June 15, June 29, Aug. 10, Sept.
21, Nov. 2, and Dec. 14, 2023; Jan. 25, Apr. 11, May 28, Aug. 30, and Dec. 5,
2024; Feb. 5, Mar. 19, and Apr. 10, 2025 docket entries. Stencil, through
Herman, waived his preliminary hearing in July 2025, and an arraignment
was held in late July 2025. *Id.*, July 7 and July 21, 2025 docket entries. Stencil
filed a motion to dismiss and a "Petition to By Pass [sic]" to the Wisconsin
Supreme Court, both of which were denied. *Id.*, May 21, June 5, June 25, and
July 8, 2025 docket entries.

### 3.4 Johnson

Johnson alleges that, as of the filing of the petition, he had been
waiting 185 days for appointment of counsel. ECF No. 1 at 1. He is facing
felony strangulation and battery charges and misdemeanor property
damage and trespass charges in *State of Wisconsin v. Demarvis Donte Johnson*,
Brown Cnty. Cir. Ct. Case No. 2024CF002112, *available at*
https://wcca.wicourts.gov/caseDetail.html?caseNo=2024CF002112&county

No=5&index=0&mode=details (last visited July 31, 2025). The complaint was filed in late November 2024, and Johnson had an initial appearance at which he was provisionally represented by counsel about a month later. *Id.*, Nov. 21 and Dec. 23, 2024 docket entries. It is not clear when he was arrested or for how long he waited in custody for the initial appearance.

The state court then repeatedly found good cause to waive the time limit for holding a preliminary hearing. *Id.*, Jan. 10, Mar. 21, May 6, and June 18, 2025 docket entries. Johnson waived his right to counsel and was permitted to proceed pro se in late June 2025. *Id.*, June 26, 2025 docket entry. A preliminary hearing was scheduled for July 25, 2025, at which proceeding Johnson again invoked his right to an attorney; the state court scheduled a status conference for August 28, 2025 and again waived the time limit for holding a preliminary hearing. *Id.*, July 25, 2025 docket entry. It appears that Johnson has been in custody for this entire time. *See generally id.*

### 3.5    Beard

Beard alleges that, as of the filing of the petition, he had been waiting 158 days for appointment of counsel. ECF No. 1 at 1. He is facing felony drug, firearm, and receiving stolen property and related misdemeanor charges in *State of Wisconsin v. Jonathen Allan Beard*, Brown Cnty. Cir. Ct. Case No. 2024CF002289, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2024CF002289&county No=5&index=0&mode=details (last visited July 31, 2025). The complaint was filed, and Johnson had an initial appearance at which he was provisionally represented by counsel, in late December 2024. *Id.*, Dec. 20, 2024 docket entries.

The state court then on two occasions found good cause to waive the time limit for holding a preliminary hearing. *Id.*, Jan. 2 and Mar. 21, 2025

docket entries. Counsel has not yet been appointed, and it appears that Beard has been in custody for this entire time. *See generally id.*

### 3.6 Gonzalez-Bracero

Gonzalez-Bracero alleges that, as of the filing of the petition, he had waited 428 days for appointment of counsel. ECF No. 1 at 1. He is facing felony sexual assault, false imprisonment, recklessly endangering safety, and disorderly conduct charges in *State of Wisconsin v. Jose Luis Gonzalez-Bracero*, Brown Cnty. Cir. Ct. Case No. 2024CF000413, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2024CF000413&countyNo=5&index=0&mode=details (last visited July 31, 2025).[7] The complaint was filed, and Gonzalez-Bracero had an initial appearance at which he was provisionally represented by counsel and had a Spanish interpreter, in late February 2024. *Id.*, Feb. 27, 2024 docket entries. The state court then repeatedly found good cause to waive the time limit for holding a preliminary hearing. *Id.*, March 27, May 22, June 19, Aug. 16, and Dec. 6, 2024; and Jan. 27, 2025 docket entries. At one point the state court "appoint[ed] Atty Randy Petrouske," *id.*, Sept. 23, 2024 docket entry, but Attorney Petrouske does not appear anywhere else on the docket. Permanent counsel was appointed in early March 2025 and later that month waived the preliminary hearing. *Id.*, Mar. 3 and Mar. 31, 2025 docket entries. A jury trial is set to begin this fall. *Id.*, May 27, 2025 docket entry.

Gonzalez-Bracero moved various times for a modification to his bond, which motions the state court denied or did not address. *Id.*, Mar. 11, Mar. 27, Apr. 26, May 22, Aug. 1, Aug. 9, Aug. 16, and Sept. 23, 2024; and

---

[7]The Court was unable to locate any state court records for Gonzalez-Bracero under his name as spelled in the petition. However, the Court believes that this is the case to which the petition refers.

Jan. 13, 2025 docket entries. It appears that he has been in custody since his initial appearance. *See generally id.*

### 3.7 Kaquatosh

Kaquatosh alleges that, as of the filing of the petition, he had been waiting 87 days for appointment of counsel. ECF No. 1 at 1. He is subject to two open state cases. First, he is facing felony drug and misdemeanor drug and weapon charges in *State of Wisconsin v. Austin Anthony Kaquatosh*, Brown Cnty. Cir. Ct. Case No. 2025CF000250, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2025CF000250&countyNo=5&index=0&mode=details (last visited July 31, 2025).[8] The complaint was filed, and Kaquatosh had an initial appearance at which he was provisionally represented by counsel, in mid-February 2025. *Id.*, Feb. 14, 2025 docket entries. The state court then on several occasions found good cause to waive the time limit for holding a preliminary hearing. *Id.*, Feb. 14, May 23, and June 25, 2025 docket entries. Kaquatosh waived his right to counsel and was permitted to proceed pro se in July 2025. *Id.*, July 10, 2025 docket entry. A preliminary hearing was held in late July 2025; Kaquatosh was bound over for trial and an arraignment is scheduled for August. *Id.*, July 25, 2025 docket entry. It appears that he has been in custody for this entire time. *See generally id.*

Second, he is facing felony eluding an officer and bail jumping charges and misdemeanor drug charges in *State of Wisconsin v. Austin Anthony Kaquatosh*, Brown Cnty. Cir. Ct. Case No. 2025CF000378, *available at*

---

[8]The Court was unable to locate any state court records for Kaquatosh under his name as spelled in the petition. However, the Court believes that these are the cases to which the petition refers.

https://wcca.wicourts.gov/caseDetail.html?caseNo=2025CF000378&county
No=5&index=0&mode=details (last visited July 31, 2025). The complaint
was filed, and Kaquatosh had an initial appearance at which he was
provisionally represented by counsel, in mid-March 2025. *Id.*, Mar. 10, 2025
docket entries. As in his other case, the state court has on several occasions
waived the preliminary hearing time limit. *Id.*, Mar. 10, May 23, and June
25, 2025 docket entries. Kaquatosh waived his right to counsel and was
permitted to proceed pro se in July 2025. *Id.*, July 10, 2025 docket entry. A
preliminary hearing was held in late July 2025; Kaquatosh was bound over
for trial and an arraignment is scheduled for August. *Id.*, July 25, 2025
docket entry. It appears that he has been in custody for this entire time. *See
generally id.*

### 3.8 Butler

Butler alleges that, as of the filing of the petition, he had been waiting
75 days for appointment of counsel. ECF No. 1 at 1. He is subject to two
open state cases. First, he faces felony charges of sexual assault of a child in
*State of Wisconsin v. Christopher Shawn Butler*, Brown Cnty. Cir. Ct. Case No.
2023CF000911, *available* *at*
https://wcca.wicourts.gov/caseDetail.html?caseNo=2023CF000911&county
No=5&index=0&mode=details (last visited July 31, 2025). The complaint
was filed in late May 2023. *Id.*, May 30, 2023 docket entry. Butler had his
initial appearance approximately two weeks later; it does not appear that
he was provisionally represented by counsel at that time. *Id.*, June 16, 2023
docket entry ("Defendant advised of right to counsel and requests counsel.
Defendant to contact the [SPD] to determine if he qualifies."). It is not clear
when he was arrested or for how long he waited in custody for the initial

appearance. At his initial appearance, Butler requested that a preliminary hearing be held within twenty days. *Id.*

Attorney Christopher Froelich ("Froelich") was appointed in late July 2023 and represented Butler at a preliminary hearing in September 2023. *Id.*, July 20, Aug. 3, and Sept. 13, 2023 docket entries. Froelich attempted to withdraw from representing Butler multiple times[9] and was ultimately permitted to do so in March 2025. *Id.*, Sept. 8 and Sept. 22, 2023 docket entries; Feb. 16, Feb. 23, and Dec. 23, 2024 docket entries; Jan. 7 and Mar. 17, 2025 docket entries. Butler requested that Froelich be permitted to withdraw once as well. *Id.*, Mar. 15, 2024 docket entry. Froelich cited a "conflict" as his reason for seeking to withdraw. *Id.*, Mar. 17, 2025 docket entry. Butler at one point requested to be permitted to proceed without counsel, but he did not renew that request. *Id.*, Jan. 7, 2025 docket entry.

It appears that Butler was released for a portion of the pendency of this case, but a bench warrant was issued when Butler failed to appear for court, and he was taken into custody in November 2024. *See id.*, Nov. 12–14 docket entries. He has been in custody since that time and is still awaiting appointment of counsel following Froelich's successful withdrawal in March 2025. *See generally id.*, Dec. 9, 2024; Jan. 7, Mar. 17, Apr. 29, June 9, and July 18, 2025 docket entries.

At Butler's request, a speedy trial date of July 23, 2025 was set. *Id.*, June 9, 2025 docket entry. However, the state court adjourned that date in mid-July 2025, noting that the SPD still had not appointed counsel for Butler and finding "good cause to exceed speedy trial limits." *Id.*, July 18, 2025

---

[9]Butler petitioned the Wisconsin Court of Appeals for leave to appeal the "[d]enial of [a]ttorney [s]ubstitution" in February 2025; the Court of Appeals denied the petition. *State of Wisconsin v. Christopher Shawn Butler*, Brown Cnty. Cir. Ct. Case No. 2023CF000911, Feb. 12, Feb. 25, and Mar. 6, 2025 docket entries.

docket entry. At this time, Butler requested dismissal of the case, which the state court denied. *Id.*

The charges in this case were refiled charges from a case originally filed in 2019. *Id.*, June 16, 2023 docket entry (citing Case No. 19CF001630); *State v. Butler*, 993 N.W.2d 168 (Table), 2023 WL 3344405 (Wis. Ct. App. 2023). The Wisconsin Court of Appeals ordered that the 2019 charges be dismissed without prejudice because "the circuit court lost personal jurisdiction over Butler by not completing [his] initial appearance 'within a reasonable time.'" *Id.*, ¶ 2 (quoting WIS. STAT. § 970.01). In the 2019 case, Butler waited 321 days for an initial appearance and 342 days for a preliminary hearing while SPD attempted to appoint counsel. *Id.*, ¶¶ 1, 3–20.

Second, Butler faces felony bail jumping charges in *State of Wisconsin v. Christopher Shawn Butler*, Brown Cnty. Cir. Ct. Case No. 2024CF002039, *available* *at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2024CF002039&county No=5&index=0&mode=details (last visited July 31, 2025). The complaint was filed, Butler was arrested on a warrant and had his initial appearance in November 2024 (at which it does not appear he was provisionally represented by counsel), and a preliminary hearing was held in January 2025. *Id.*, Nov. 13, 2024 and Jan. 23, 2025 docket entries. That case has followed a similar course as the first-filed 2023 case—Froelich appeared for Butler and was eventually permitted to withdraw; Butler at one point requested to proceed pro se; counsel still has not been appointed; and Butler remains in custody. *See generally id.*

### 3.9 Legal Theories and Requested Relief

Petitioners argue that delays in appointment of counsel in their cases violate their rights to due process and their rights under the Sixth, Eighth, and Fourteenth Amendments. ECF No. 1 at 3. Petitioners cite Wisconsin Court of Appeals cases, *id.* at 3–4 (citing *Lee*, 955 N.W.2d 424, and *Butler*, 2023 WL 3344405); Wisconsin's preliminary hearing and speedy trial statutes, *id.* at 5–6 (citing WIS. STAT. §§ 970.03(1)–(2) and 971.10(2)(a)); and an out-of-circuit case that upheld a district court injunction requiring indigent defendants to be appointed counsel or released, *id.* at 4 (citing *Betschart v. Oregon*, 103 F.4th 607, 613 (9th Cir. 2024)).

Petitioners seek to proceed as a class on behalf of themselves and "all indigent defendants, and all future person(s) who[] are not appointed counsel within 10 days of their initial appearance, also to include defendants who[se] attorneys withdraw[] from (their) case(s)." *Id.* at 1, 2; *id.* at 6. On behalf of this proposed class, they seek a "temporary restraining order on Wisconsin courts" requiring the release of Petitioners and "all current and future indigent defendants" who do not receive timely appointment of counsel. *Id.* at 6. They also argue that they are entitled to a preliminary injunction. *Id.* at 4–5.

### 4. LAW & ANALYSIS

Petitioners cannot proceed at this time, both because the Court cannot certify this action as a class or representative action and because Petitioners have failed to exhaust their state court remedies. As a threshold matter, the Court delineates which of the claims and legal theories that Petitioners have raised are cognizable in a petition for habeas corpus.

### 4.1    Cognizable Claims

Petitioners invoke the Sixth Amendment and are presumably referring to its dual guarantees of counsel and a speedy trial. The Court presumes that a claim of a violation of Petitioners' Sixth Amendment right to a speedy trial because of a delay in appointment in counsel is cognizable in habeas (although it cannot proceed in the present case, *see infra* Section 4.2). *See Vermont v. Brillon*, 556 U.S. 81, 85 (2009) ("The state may be charged [for speedy trial purposes] with those months [in which the defendant lacked an attorney] if the gaps resulted from the trial court's failure to appoint replacement counsel with dispatch. Similarly, the State may bear responsibility if there is 'a breakdown in the public defender system.'" (quoting *State v. Brillon*, 955 A.2d 1108, 1111 (Vt. 2008))); *see also Harris v. Ball*, No. 25-CV-479-JPS, 2025 WL 1529364, at *6 n.8 (E.D. Wis. May 29, 2025) ("The delay in holding a preliminary hearing could rise to the level of a speedy-trial violation . . . ." (quoting *Harris v. Lucas*, Case No. 21-CV-1124-BHL, ECF No. 4 at 5 (E.D. Wis. Nov. 16, 2021))).

Whether Petitioners can raise a claim that their Sixth Amendment right to counsel was violated by delays in appointment of counsel, independent of a Sixth Amendment speedy trial claim premised on those same delays, is a more nuanced question. *Gideon* does not guarantee a particular time frame within which counsel must be appointed. *See generally* 372 U.S. 335. As a legal matter, it is not clear whether those Petitioners who have been appointed counsel after delays could raise such a claim, because they were eventually appointed counsel as *Gideon* requires. It is also not clear whether those Petitioners still waiting for appointment of counsel, but who have not (like Johnson) decided to forego counsel, could raise such a claim; they have also not been denied the right to counsel—rather, they are

waiting for the appointment of counsel that *Gideon* guarantees. There are also separate questions of whether (1) Johnson and Kaquatosh could raise Sixth Amendment claims that they were denied the right to counsel because they opted to represent themselves; (2) Butler could raise such a claim for his felony initial appearance if he, in fact, did not have counsel during that proceeding as the state court docket suggests; and (3) Flowers could raise such a claim for his misdemeanor initial appearance if he, in fact, did not have counsel during that proceeding as the state court docket suggests, assuming that he is constitutionally entitled to counsel at such a proceeding. Because the Court denies the petition for other reasons, the Court will not explore further whether any Petitioner can raise a Sixth Amendment claim that his right to counsel was violated by delays in appointment of counsel.

Petitioners also say that delays in appointment of counsel, and resulting delays in holding important proceedings such as preliminary hearings, violate their due process rights. Due process is a broad umbrella, and due process claims in the habeas context are often used to vindicate "evidentiary and instructional errors" that impede the "constitutional right to a fair trial." *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004). A due process claim may also be available to vindicate delays in the appeal or postconviction review process. *See Williams v. Sheahan*, 80 F. App'x 471, 471–72 (7th Cir. 2003) (citing *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) and *Allen v. Duckworth*, 6 F.3d 458, 459 (7th Cir. 1993)). Petitioners' allegations of unconstitutional delays in appointment of counsel at the trial court level do not map well onto either theory of a due process violation.

Petitioners also do not argue what process, besides appointment of counsel, was due.[10]

In any event, "[c]ourts evaluating due process claims arising out of delayed state proceedings typically apply the four factors adopted by the Supreme Court to evaluate a delay in the pre-trial context." *U.S. ex rel. Brown v. Shaw*, No. 09 C 2837, 2009 WL 5166220, at *6 (N.D. Ill. Dec. 21, 2009) (citing *Barker v. Wingo*, 407 U.S. 514, 514 (1972)). So even if the Court construed the petition to raise an independent due process claim, the analysis of this claim would ultimately mirror the analysis of any Sixth Amendment speedy trial claim. *See infra* Section 4.2. Therefore, the Court determines that the Sixth Amendment right to counsel is the most fitting legal theory by which to analyze the constitutional violation that Petitioners allege.

Finally, Petitioners also invoke the Eighth Amendment, ECF No. 1 at 3, which prohibits "[e]xcessive bail" and "cruel and unusual punishments." U.S. CONST., amend. VIII. The Eighth Amendment applies only to convicted persons, so is not relevant insofar as Petitioners intend to challenge their pretrial detention as unconstitutional. *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999) (citing *Est. of Cole v. Fromm*, 94 F.3d 254, 259 n.1 (7th Cir. 1996)). Petitioners have not explicitly argued that the state court's bail

_____

[10] A claim that the state court violated the Wisconsin statute setting time limits for holding a preliminary hearing is not, in and of itself, cognizable in habeas. *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003) ("Federal habeas corpus relief does not lie for errors of state law . . . . (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioners' citations to *Lee* and *Butler* are therefore inapposite as neither of these cases held that delays in holding preliminary hearings rose to the level of a constitutional violation. *See supra* Sections 3.1 and 3.9. A claim that the state court did not timely hold initial appearances may be cognizable in habeas as a due process claim depending on the circumstances of the defendant's arrest, *see supra* note 3, but Petitioners have not made this argument.

decisions were excessive, and if they intended to invoke this theory of a constitutional violation, they have not included relevant factual allegations such as the bail amounts that were set in each of their cases. For these reasons, the Court will not analyze the Eighth Amendment further in this Order.

### 4.2    Representative Action

The Court next addresses the purported collective nature of the petition. "Petitions for a writ of habeas corpus are by nature an individual action," but "situations exist in which it is proper for a group of petitioners to maintain a consolidated or class habeas action." *Borzych v. Bertrand*, 974 F. Supp. 1220, 1222 (E.D. Wis. 1997) (citing *Death Row Prisoners of Pa. v. Ridge*, 169 F.R.D. 618 (E.D. Pa. 1996) and *Ashmus v. Calderon*, 935 F. Supp. 1048, 1063–69 (N.D. Cal. 1996), *rev'd*, 523 U.S. 740 (1998)); *Perry v. Scibana*, Nos. 04-C-332-C and 04-C-314-C, 2004 WL 1253300, at *1 (W.D. Wis. June 4, 2004) ("[T]he Seventh Circuit [has] recognized that a multi-petitioner habeas corpus action c[an] be maintained under certain circumstances." (citing *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975))).

While Federal Rule of Civil Procedure 23, which governs class actions, "d[oes] not apply to habeas proceedings, . . . the principles of Rule 23 provide[] guidance for evaluating when to allow such representative actions." *Morris v. Thomas*, No. 07-3057, 2007 WL 2683832, at *1 (C.D. Ill. Sept. 6, 2007) (citing *United States ex rel. Morgan v. Sielaff*, 546 F.2d 218 (7th Cir. 1976)). A representative habeas corpus action is proper when "1) there c[an] be no genuine issues of fact; 2) there [i]s a single issue of law identical to all prisoners identified in the class; 3) the number of prisoners [i]s too great for joinder to be practical; and 4) the issue ha[s] been definitively

adjudicated by the court of appeals in a recent decision." *Perry*, 2004 WL 1253300, at *1 (citing *Bijeol*, 513 F.2d 965).

Additionally, "a pro se litigant 'cannot adequately represent [a] putative class.'" *Garrick v. Moody Bible Inst.*, 494 F. Supp. 3d 570, 580 (N.D. Ill. 2020) (quoting *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) and citing 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1769.1 (2d ed. 1986) ("[C]lass representatives cannot appear pro se.")). A district court may appoint counsel "for the purpose of determining whether this is a suit appropriate for class certification and, if so, to litigate the matter on behalf of the class." *Perry*, 2004 WL 1253300, at *1.

Petitioners may not litigate their petition as a representative habeas corpus action unless represented by counsel, which they are not. Even if they were, or even if the Court were to appoint counsel, certification of a representative action would not be appropriate based on the allegations in the petition and state court docket information subject to judicial notice.

The first *Bijeol* factor related to certifying a representative habeas action—whether there are any genuine issues of fact as to each Petitioner— weighs against a finding that Petitioners can proceed as a class. At a basic level, there are differences among the Petitioners with respect to the procedural postures of their claims. Flowers attempts to challenge a closed case, whereas Stencil, Johnson, Beard, Gonzalez-Bracero, Kaquatosh, and Butler attempt to challenge open and ongoing cases. Flowers appears to challenge a misdemeanor case whereas the rest of Petitioners' cases involve felonies; different procedural rules govern each type of charge. Some Petitioners were or have been appointed counsel while others are still waiting for appointment of counsel (or have chosen, under the

circumstances, to represent themselves). All of these differences would complicate administration of a representative action and Petitioners' proposed relief.

Moreover, the factual differences in the state court's processing of each Petitioner's case would require individual factual analysis to determine whether a constitutional violation has occurred. *See Morris*, 2007 WL 2683832, at *2 n.2 ("In this case, the treatment of each committed person would need to be proven to determine whether he or she was subjected to punishment without due process."). The Court comes to this conclusion by looking at the substantive law that would apply to Petitioners' claim that delays in appointment of counsel violated their Sixth Amendment right to a speedy trial. *See supra* Section 4.1. This type of claim requires the Court to analyze "the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *O'Quinn v. Spiller*, 806 F.3d 974, 977 (7th Cir. 2015) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Based on the record currently before the Court, most of the *Barker* factors look different in each Petitioner's case.

With respect to the first *Barker* factor, each Petitioner waited or has been waiting a different length of time for appointment of counsel, ranging from about three months to over a year. While the Court acknowledges that even a short amount of time in pretrial detention can be seriously disruptive to an accused person's life, "without an 'interval between accusation and trial [that] has crossed the threshold dividing ordinary from presumptively prejudicial delay,' a defendant cannot complain that the government has denied him a speedy trial." *United States v. Cummins*, 762 F. Supp. 3d 766, 773 (N.D. Ind. 2025) (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). "[T]he court will move on to the other three [*Barker*] factors only

when a defendant can establish that 'the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'" *Id.* (quoting *Doggett*, 505 U.S. at 652). "[G]enerally the law requires a 'more searching analysis' at eight or nine months [of delay in holding trial], while it views delays 'approaching one year to be presumptively prejudicial.'" *Id.* (quoting *United States v. White*, 443 F.3d 582, 589–90 (7th Cir. 2006); other citations omitted). Some Petitioners have alleged a delay in appointment of counsel so long as to be considered presumptively prejudicial, whereas others have alleged relatively short delays that do not trigger any further analysis of the *Barker* factors. Petitioners also face a wide array of charges, some (e.g., child sexual assault) more complex than others (e.g., drugs); greater delays can be tolerated for more "serious [and] complex" charges." *Id.* (citing *Barker*, 407 U.S. at 531).

The second *Barker* factor—the reasons for the delay—"is a highly case-specific inquiry," *O'Quinn*, 806 F.3d at 977, and assigns "different weights . . . to different reasons," *Barker*, 407 U.S. at 531. Here, there is no suggestion that the prosecutors, SPD, or the state courts are "deliberate[ly] attempt[ing] to delay the trial in order to hamper the defense," *Barker*, 407 U.S. at 531, nor that Petitioners' conduct is causing the delays in appointment of counsel, *United States v. Bell*, 925 F.3d 362, 376 (7th Cir. 2019) ("A defendant's lack of cooperation with counsel and change of counsel will . . . be weighed against the defendant." (citing *United States v. Robey*, 831 F.3d 857, 864 (7th Cir. 2016))). It appears that most of the delays in these cases are resulting from a lack of counsel willing to take SPD cases, or Brown County Circuit Court judges' reluctance to appoint counsel at county expense. Additionally, the necessity of getting interpreters for Gonzalez-Bracero and withdrawal of counsel in Stencil's and Butler's cases

(the reasons for which are unclear) may have added to delays. These "more neutral reason[s]" are attributable to the government rather than the defendant. *Barker*, 407 U.S. at 531. Based on the record currently before the Court, there is some cohesion among Petitioners' circumstances with respect to the reasons for their delay. However, because Petitioners' circumstances with respect to the first and fourth *Barker* factors vary so greatly, commonality in this factor alone does not support finding that a representative action on a Sixth Amendment speedy trial claim would be appropriate.

With respect to the third *Barker* factor, Petitioners have "some responsibility" to assert a speedy trial claim before the state court. *Id.* at 529. "Something as simple as objecting to a continuance may be considered as asserting the right . . . ." *Cummins*, 762 F. Supp. 3d at 777 (citing *White*, 443 F.3d at 590–91). There is not sufficient information in the petition and state court dockets to determine whether each Petitioner raised his right to a speedy trial in some way, so the Court will disregard this *Barker* factor in the present analysis.

On the fourth *Barker* factor, there appear to be variations in the amount and kind of prejudice that each Petitioner has suffered. "The [C]ourt examines prejudice 'in light of the interests the Sixth Amendment seeks to protect." *Id.* at 778 (quoting *United States v. Harmon*, 721 F.3d 877, 883 (7th Cir. 2013)). These interests are "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. While Petitioners seem to invite the Court to conclude that any significant delay in appointment of counsel is per se prejudicial, they fail to explain how these delays impacted each of their lives and cases. What were

Case 2:25-cv-00831-JPS     Filed 07/31/25     Page 25 of 32     Document 3

the consequences of pretrial incarceration in each Petitioner's case (did they lose jobs, were they separated from dependent children or family, etc.)? *See id.* (referencing "loss of a job" and "disrupt[ion of] family life"). What were the consequences of pretrial *release* in Stencil's case? *See id.* at 533 ("[E]ven if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility."). To what extent were they impaired in the defense of their cases—did witnesses or evidence become unavailable? How did the delays factor into Flowers's decision to plead guilty in his earlier case and Johnson's decision to represent himself?[11]

In sum, the length of delay and prejudice analyses are likely to diverge significantly and raise questions of fact unique to each Petitioner. *See Morris*, 2007 WL 2683832, at *2 n.2. This counsels against permitting Petitioners to pursue a representative habeas action on a Sixth Amendment speedy trial claim.

Returning to the *Bijeol* factors relevant to certifying a representative habeas action, the rest of the facts also do not support doing so. Petitioners have not asserted how many pretrial detainees their petition would cover, but purport to seek relief on behalf of all pretrial detainees across Wisconsin, ECF No. 1 at 6, so the Court can presume that the number of prisoners would be "too great for joinder to be practical." *Perry*, 2004 WL 1253300, at *1 (citing *Bijeol*, 513 F.2d 965). However, the sheer numerosity of the proposed representative class is not the only consideration. The Court has construed the petition as raising only a Sixth Amendment speedy trial

---

[11]Also, Flowers probably waived his speedy trial claim by pleading guilty. *State v. Asmus*, 782 N.W.2d 435, ¶ 5 (Wis. Ct. App. 2010) ("Violations of the right to a speedy trial are waived by entry of a guilty plea." (citing *Edwards v. State*, 186 N.W.2d 193 (Wis. 1971)).

claim, but as noted *supra* Section 4.1, certain Petitioners may be able to explore Sixth Amendment right to counsel claims. Therefore, the Court cannot conclude that the petition presents "a single issue of law identical to all prisoners identified in the class." *Id.* And even if it did, this issue has not "been definitively adjudicated by the court of appeals in a recent decision." *Id.* The Court is not aware of any Seventh Circuit precedent holding that delays in appointment of state-funded counsel can violate the Sixth Amendment speedy trial right or any other constitutional right. The out-of-circuit case on which Petitioners rely, *Betschart*, 103 F.4th 607, is not binding authority. The Wisconsin cases that Petitioners cite do not apply federal constitutional law so are also not relevant to this factor.

For all these reasons, the Court concludes that Petitioners cannot proceed in a representative habeas action. Because Petitioners may be able to pursue their claims individually, the Court will deny the petition without prejudice to permit them to do so if they wish.

### 4.3    Exhaustion and *Younger* Abstention

The Court need not further examine whether the petition survives other obstacles to review, but because Petitioners may seek relief on an individual basis, the Court briefly notes two potential barriers to doing so of which Petitioners should be aware.

"While § 2241 allows a pretrial detainee to bring a habeas corpus petition, this ability is limited by the desire of federal courts not to interfere with pending state criminal prosecutions except in special circumstances." *Gunn v. Lucas*, No. 20-CV-1623, 2020 WL 7231058, at *1 (E.D. Wis. Dec. 8, 2020) (citing *Hall v. Malcomson*, No. 17-CV-726-JPS, 2017 WL 2533392, at *3 (E.D. Wis. June 9, 2017)); *Olsson v. Curran*, 328 F. App'x 334, 335 (7th Cir. 2009) ("Federal courts must abstain from interfering with state court

criminal proceedings involving important state interests, as long as the state court provides an opportunity to raise the federal claims and no 'exceptional circumstances' exist." (quoting *Stroman Realty, Inc., v. Martinez,* 505 F.3d 658, 662 (7th Cir. 2007) and citing *Younger v. Harris,* 401 U.S. 37, 43 (1971))). This is known as the doctrine of *Younger* abstention.

Exceptional circumstances may exist where a pretrial detainee is attempting to raise via a § 2241 petition "claims that must be addressed by the federal court prior to a state conviction in order to prevent them from becoming moot." *Gunn,* 2020 WL 7231058, at *1 (citing *Sweeney v. Bartow,* 612 F.3d 571, 573 (7th Cir. 2010)). Thus, "[s]peedy trial . . . claims are . . . [a] recognized exception[] allowed to proceed under § 2241." *Id.* (citing *Sweeney,* 612 F.3d at 573).

Additionally, "pretrial detainees raising permissible federal claims under § 2241 must exhaust those claims first through available state court proceedings." *Id.* (citing *United States v. Castor,* 937 F.2d 293, 296–97 (7th Cir. 1991)); *see also Olsson,* 328 F. App'x at 335 ("Relief for state pretrial detainees through a federal petition for a writ of habeas corpus is generally limited to speedy trial and double jeopardy claims, and only after the petitioner has exhausted state-court remedies." (collecting cases)). This typically requires that the petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the [s]tate's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *Mays v. Dart,* 453 F. Supp. 3d 1074, 1088 (N.D. Ill. 2020) ("A pretrial detainee must 'exhaust all avenues of state relief' before seeking a writ of habeas corpus through a [§] 2241 action." (quoting *United States v. Castor,* 937 F.2d 293, 296–97 (7th Cir. 1991))). "'Sound judicial discretion governs' the court's decision to require or excuse exhaustion." *Davis v.*

*Spoden*, No. 09-CV-002-BBC, 2009 WL 249973, at *2 (W.D. Wis. Feb. 2, 2009) (quoting *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004)). "Excusing exhaustion is appropriate only under limited circumstances, such as where unreasonable delay would result or there is no reasonable prospect of petitioner receiving relief." *Id.* (citing same).

Petitioners' Sixth Amendment speedy trial claims premised on delays in the appointment of counsel are among those exceptional claims not subject to *Younger* abstention and theoretically permitted to proceed in a § 2241 petition, but they still remain subject to the exhaustion requirement.[12] It does not appear that Petitioners have presented their claims to the Wisconsin Court of Appeals and the Supreme Court of Wisconsin for review. (Butler presented his claims in a *past* case but not in the present case in which the same charges were refiled.) Therefore, if any

---

[12]Flowers, whose case has concluded, could proceed on a § 2254 petition and would not be subject to *Younger* abstention. Such a petition is also subject to the requirement of exhaustion. 28 U.S.C. § 2254(b)(1)(A).

As earlier noted, the fact that Flowers has been convicted whereas the other Petitioners are still detained pretrial is one of several reasons not to permit the case to proceed in a representative or class fashion. Generally, a habeas petitioner may not file a "second or successive" § 2254 petition without prior permission from the federal circuit court. 28 U.S.C. § 2244(b). "[E]ach class member can only bring one habeas action without the permission of the Court of Appeals." *Morris*, 2007 WL 2683832, at *2 (citing 28 U.S.C. § 2244(b)). But "[m]any proposed class members may have individual claims that are unrelated to the Petitioners' theory of criminal confinement." *Id.* Flowers is no longer a pretrial detainee in the case in which he alleges his constitutional rights were violated, so he cannot proceed on behalf of any such class. Permitting Flowers to proceed on behalf of other individuals who have been *convicted* after a delay in appointment of counsel could jeopardize those other individuals' right to file a separate habeas petition on any grounds besides the Sixth Amendment speedy trial claim he attempts to raise herein. It would also render administration of the representative action extremely difficult, because "this Court cannot hear an action, representative or otherwise, on behalf of anyone in the proposed class who has already filed a federal habeas petition," so would be required to individually analyze whether each member of the proposed class has filed a previous § 2254 petition. *Id.*

Petitioner intends to seek habeas relief, he should attempt to exhaust his state court remedies before doing so.

5.    **CONCLUSION**

For the reasons stated above, the Court will deny the petition without prejudice. The dismissal of this case does not preclude Petitioners from attempting to raise (or re-raise) their arguments before the state court or from pursuing individual habeas petitions.

The Court also notes that there is a civil case pending before the Brown County Circuit Court in which a group of plaintiffs challenges delays in appointment of counsel and seek class relief. *See Antrell Thomas et al. v. Anthony S. Evers et al.*, Brown Cnty. Cir. Ct. Case No. 2022CV001027, *available                                                                    at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2022CV001027&county No=5&index=0 (last visited July 31, 2025); *Antrell Thomas et al. vs. Anthony S. Evers et al.*, NAT'L ASS'N OF CRIM. DEF. LAWS. (Aug. 23, 2022), https://www.nacdl.org/Document/AntrellThomasetalvAnthonySEversetal [perma.cc/K4WE-LN8K]. Petitioners may wish to consult this case to determine if it will provide the relief that they are seeking.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, which can be applied to § 2241 petitions by operation of Rule 1(b) of the same, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the petitioner must make a "substantial showing of the denial of a constitutional right." "A petitioner makes a 'substantial showing where reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate

to deserve encouragement to proceed further.'" *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009) (quoting *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008)). The law surrounding representative actions in the habeas context and failure to exhaust is sufficiently clear such that reasonable jurists would not debate its application to the facts herein. The Court will therefore deny Petitioners a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioners Josh F. Flowers, Robert Stencil, Demarvis Johnson, Jonathen Beard, Jose L. Gonzalez-Bracero, Austin Anthony Kaquatosh, and Christopher Butler's petition for a writ of habeas corpus, ECF No. 1, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of July, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.